KRISTINA S. HOLMAN #3742
4475 South Pecos Road
Las Vegas, Nevada 89121
Tel: (702) 454-2111
Fax: (702) 454-3333
E-mail: lbrick@mhrslaw.com
Attorney for Plaintiff,
SHERI WOODRUFF

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SHERI WOODRUFF,                              )
                                             )
      Plaintiff,                       )
                                             )
vs.                                          )
                                             )   **COMPLAINT**
SUN CAB, INC. d/b/a NELLIS CAB               )
COMPANY, a Nevada corporation;               )
ROE CORPORATIONS I through X,                )
inclusive; and DOES I through                )
X, inclusive,                                )
                                             )
      Defendants.                      )
_____ )

COMES NOW the PLAINTIFF, SHERI WOODRUFF, by and through her attorney of record,

KRISTINA S. HOLMAN, and for causes of action, does hereby state and allege as follows:

### PARTIES

1.    Plaintiff, SHERI WOODRUFF (hereinafter "Plaintiff" or "Ms. Woodruff") was at all

relevant times mentioned herein resident of Clark County, Nevada.

2.    Defendant, SUN CAB, INC. d/b/a NELLIS CAB COMPANY (hereinafter "NELLIS

CAB" or "Defendant"), is a Nevada corporation, believed to be duly licensed and authorized to conduct

business in Clark County, State of Nevada and was doing so at all times relevant hereto.

3.    Doe Defendants and Roe Corporation Defendants are parties whose names or true

identities are not now known to Plaintiff at this time.  However, these Defendants are believed to have

some responsibility for the acts or omissions complained of herein.  Upon discovery of the true name

of any party, Plaintiff will seek to amend this Complaint accordingly.

///

## JURISDICTION AND VENUE

4.      This is a civil action for damages and injunctive relief under a variety of state and federal statutes prohibiting discrimination and to secure the protection of and to redress deprivation of rights under these laws and related tort claims.

5.      Plaintiff's statutory claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*.;  the Civil Rights Act of 1991, Pub. L. No. 102-166; 105 Stat. 1071 (1991) ("1991 Civil Rights Act"); and the Nevada anti-discrimination statute, N.R.S. § 613.310 *et seq*.  There may be other federal statutes and regulations applicable to Defendants which provide additional remedies for discrimination and Plaintiff will seek to amend this complaint when appropriate.

6.      Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC")(copy attached as Exhibit "A"), on or about September 9, 2005.

7.      Plaintiff received a "Right to Sue" notice from the EEOC dated 9/28/06 indicating Plaintiff had 90 days from that date of the Notice to file a lawsuit against Defendant Nellis Cab. Plaintiff has therefore fulfilled all jurisdictional requirements for the filing of this suit.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8.      As employers in Nevada, Defendants and related companies are required to comply with all state and federal statutes which prohibit sex discrimination pursuant to state laws and 42 U.S.C. § 2000e, *et seq*., as amended.

9.      In or about June 2003, Plaintiff, Sheri Woodruff, was hired by Defendant Nellis Cab as a taxi cab driver. Plaintiff brought to the job over several years of driving experience and was a consummate professional with an impeccable employment record.

10.     Plaintiff was provided with a written discrimination and harassment policy contained in Defendant's employee handbook entitled "Nellis Cab Company Rules and Procedures" (copy attached as Exhibit "B") which states in pertinent part:

> *It is expressly stated that willful acts of employees such as physical abuse, wrongful detention, verbal abuse, harassment, sexual assault or abuse, slander or discrimination of any kind upon any person in management, passengers, fellow employees, pedestrians, taxi regulators, resort employees, other public transportation company employees/drivers, is forbidden and is BEYOND THE SCOPE OF EMPLOYMENT.* (p. 1)

2

*It is the responsibility of each employee to show respect to all personnel, visitors, customers, and vendors . . . Discourtesy and disrespect towards any other employee, refusal to comply with rules, orders, instruction or acting in any such conduct which undermines managerial authority or disrupts other employees from carrying out company directive, are prohibited acts and grounds for disciplinary action, including termination . . . Prohibited acts providing grounds for immediate termination include, but are not limited to: fighting on company premises; loud or boisterous conduct (or horseplay) which may be discourteous or harmful; racial remarks; use of threatening profane, abusive or obscene language at work; harassment or intimidation of fellow employees; interference with the duties of co-workers; brandishing firearms or weapons of any kind.*
(pp. 2 - 3)

**TERMINATION:**
*No warning letter need be given to any Employee before discharge if the cause of such discharge is:*
*. . . 14. Offensive actions or language in a public place while in a work status.*
*. . .18.  Willful misconduct.*
*. . .23.  Threatening, intimidating, coercing or interfering with other employees.*
(pp. 11 - 12)

11.     Beginning in or about January of 2004, a driver named "Nacho" (who was later identified as Jose Moreira) began a pattern of harassment and sexual assault against Ms. Woodruff, which included statements to her like, "I want to f___ you, mommy," "I want to touch your titties, mommy," "I want to taste you, baby," "Give me sex, mommy."

12.     Ms. Woodruff always responded "No" to Nacho's advances, but in response to her continual rebuffs, Nacho just became bolder. He would reach through the window of her taxi, and if she wasn't quick enough to slap his hands away or roll up her window, he would pinch her breasts or try to grab her crotch or thigh.

13.     At approximately 1:00 a.m. on June 4, 2005, Nacho drove his taxi at an angle up to Ms. Woodruff's, blocking her exit as she was parked at the Rio Hotel taxi stand. He got out of his taxi, and before Ms. Woodruff could protect herself, he reached in, grabbed her head, forcefully kissing her on the mouth, then biting her.

14.     Ms. Woodruff immediately called her former supervisor, Ron McGee, and left a message on his voicemail asking for advice regarding the incident.  She then received a call from her former supervisor, Jeff Worth, who instructed her to fill out an incident report when she returned to the Nellis yard.

///

15.     Upon her return to Defendant's premises on June 4, 2005, Ms. Woodruff filled out an incident report and gave it to Larry Proctor, the supervisor on duty. Mr. Proctor read the report and told Ms. Woodruff he would contact Jamie Peno, the Nellis general manager. Ms. Woodruff commented to Mr. Proctor that because Nacho was a "high booker" and was Jamie's pet, that she doubted anything would be done about it. Mr. Proctor assured her that because this was a serious matter, she could trust Mr. Peno to handle it.

16.     On June 6, 2005, Mrs. Woodruff spoke to Mr. Peno regarding the incident. He responded by asking her what she did to encourage Nacho, that her friendly personality caused men to misinterpret her intentions, that another female employee had carried on lots of affairs with male employees, and that Latin men think "no" means "yes." Ms. Woodruff was furious that Mr. Peno didn't seem to take her complaints seriously, and, in fact, considered the incidents with Nacho to be her fault.

17.     On June 7, 2005, Ms. Woodruff contacted an attorney seeking advice and also contacted the Las Vegas Metropolitan Police, the Sexual Assault Detail, inquiring as to the procedures for filing charges against Nacho.  Ms. Woodruff also spoke with Supervisor Ron Polmeroy, describing the ongoing incidents of harassment and assault as well as Mr. Peno's apparent disregard for her complaints.

18.     Ms. Woodruff was then escorted to Mr. Peno's office, who inquired of her as to the problem as if he wasn't aware of the incident report or his prior conversations with Ms. Woodruff.  Mr. Peno stated that because Ms. Woodruff had not reported Nacho's harassment and assault against her when it first started, that the law protecting her from sexual harassment did not apply. He repeated he thought she was just too friendly, that she needed to understand the Latin male attitude about sex.

19.     When Ms. Woodruff stated she simply wanted Mr. Peno to do his job and stop the harassment, Mr. Peno threatened to suspend both Ms. Woodruff and Nacho until an investigation could be completed.  Mr. Peno then stated he would talk to Nacho and instruct him to stay away from Ms. Woodruff and all female employees.

20.     On June 8, 2005, Ms. Woodruff met with Mr. Peno again and told him that if he would do what was necessary to stop the harassment, she would not pursue legal action or file a police report. Mr. Peno stated he had spoken with Nacho who had agreed to stay away from her and all female employees. Mr. Peno added that if either Ms. Woodruff or Nacho spoke to each other, either one would

4

1   be terminated. Ms. Woodruff agreed to not speak with Nacho again.

2        21.    Later that same evening, Ms. Woodruff received a telephone call from another female

3   driver who told her Nacho tried to cut her off on the back exit of Treasure Island, and was very upset.

4   Ms. Woodruff instructed this female driver to report it to both her supervisor and Mr. Peno, as well as

5   complete an incident report.

6        22.    On June 9, 2005, Ms. Woodruff contacted Scott Henneforth, an investigator for the

7   Taxicab Authority, and reported the circumstances surrounding her complaints against Nacho, and that

8   he had already violated his agreement to not contact any female employees at Nellis.  Mr. Henneforth

9   asked her to identify Nacho by looking through Nellis driver photos, and she discovered that his real

10   name was Jose Moreira.

11        23.    Ms. Woodruff then filed a report against Mr. Moreira with the Taxicab Authority.  Ms.

12   Woodruff learned later that after the other female driver reported Nacho's behavior to Mr. Peno, she was

13   told to not file a report and just drop it. She was also instructed to have no further contact with Ms.

14   Woodruff.

15        24.    On August 8, 2005, after making every effort to cope with the ongoing and escalating

16   harassment as well as the lack of preventative action on the part of management, Ms. Woodruff gave her

17   notice of resignation.

18                            **FIRST CAUSE OF ACTION**
                             **Assault**

19

20        25.    Paragraphs 1 through 24 are incorporated herein by reference.

21        26.    On numerous occasions, Defendant employee, Jose Moreira a\k\a "Nacho," advanced

22   toward and threatened Plaintiff with the intent to cause harmful or offensive touching, and did so.  The

23   first assault placed Plaintiff in apprehension of an immediate harmful or offensive touching on

24   subsequent occasions.

25        27.    As a direct a proximate cause of Defendant employee's intentional actions, Plaintiff was

26   put in apprehension of an imminent offensive or harmful touching.

27        28.    Plaintiff did not consent to any of the physically or verbally abusive conduct by

28   Defendant's management and employees.

29.     As a direct and proximate cause of Defendant employee's acts of placing Plaintiff in apprehension of an offensive or harmful touching, Plaintiff suffered and continues to suffer special, general and compensatory damages.

30.     Pursuant to N.R.S. § 41.130, or alternatively, under the doctrine of *Respondeat Superior*, Defendants, as an employer, are liable to Plaintiff for the wrongful acts of its employees.

31.     Defendant's actions were wrongful, willful, oppressive, malicious, and done with the intent to harm Plaintiff or with reckless disregard to the safety of Plaintiff.  Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish and deter the Defendant and all others from engaging in such conduct.

32.     Defendant is also liable for punitive damages pursuant to N.R.S. § 42.007 since it knew that its employee had committed assault and battery on Plaintiff on numerous occasions, that Defendant management, and employee Mr. Moreira, were unfit as management and/or employees, and that Defendant Nellis Cab still employed them with a conscious disregard of the rights or safety of others; and/or it authorized, condoned and ratified the conduct of Defendant's management and/or employees; and/or Defendant is itself guilty of oppression, fraud or malice, express or implied.

33.     It has been necessary for Plaintiff to retain the services of an attorney and she should be compensated therefor.

## SECOND CAUSE OF ACTION
**Battery**

34.     Paragraphs 1 through 33 are incorporated herein by reference.

35.     Defendant's employee acted with the intent to cause an offensive or harmful touching of Plaintiff's person.

36.     Among other things, Defendant's employee Mr. Moreira caused harmful and/or offensive touching of Plaintiff's person by, including but not limited to, grabbing her, forcefully kissing her, and fondling her.

37.     Plaintiff did not consent to any of the physically or verbally abusive conduct by Defendant's management and employees.

6

38.     As a direct and proximate cause of Defendant employee's offensive and harmful touching, Plaintiff suffered and continues to suffer special, general, and compensatory damages.

39.     Pursuant to N.R.S. § 41.130, or alternatively, under the doctrine of *Respondeat Superior*, Defendant, as an employer, is liable to Plaintiff for the wrongful acts of its management and employees.

40.     Defendant's actions were wrongful, willful, oppressive, malicious, and done with the intent to harm Plaintiff or with reckless disregard to the safety of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish and deter Defendant and all others from engaging in such conduct.

41.     Defendant is also liable for punitive damages pursuant to N.R.S.§ 42.007 since it knew that its employee had committed assault and battery on Plaintiff, that Defendant management and employee Ms. Moreira, were unfit as management and/or employees, and that Defendant still employed them with a conscious disregard of the rights or safety of others; and/or it authorized, condoned and ratified the conduct of Defendants' management and/or employees; and/or Defendant itself is guilty of oppression, fraud or malice, express or implied.

42.     It has been necessary for Plaintiff to retain the services of an attorney and she should be compensated therefor.

### THIRD CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

43.     Paragraphs 1 through 42 are incorporated herein by reference.

44.     The conduct of Defendant's management and employees against Plaintiff, including but not limited to, grabbing her, forcefully kissing her, and fondling her, making unwelcome sexually suggestive, harassing and offensive comments to her, was an abuse of Defendants' position as her employer, who is vested with substantial power to control Plaintiff's work environment and to damage her interests and well-being.

45.     Defendant's management and employee's conduct was extreme and outrageous and was done with the intention of, or reckless disregard for, causing emotional distress to Plaintiff and in violation of Defendant's corporate policies.

46.     Plaintiff did suffer and continues to suffer severe mental anguish and emotional distress

1  as a result of Defendant's management and employee's actions and the callous indifference and inaction

2  of Defendants.

3      47.    Pursuant to N.R.S. § 41.130, or alternatively, under the doctrine of *Respondeat Superior*,

4  Defendant, as an employer, is liable to Plaintiff for the wrongful acts of its management and employees.

5      48.    Defendant's management and employees actually and proximately caused Plaintiff's

6  severe mental anguish and emotional distress.

7      49.    As a direct and proximate cause of Defendant's employee's offensive and harmful

8  touching, Plaintiff suffered and continues to suffer special, general, and compensatory damages.

9      50.    Defendant's actions were wrongful, willful, oppressive, malicious, and done with the

10  intent to harm Plaintiff or with reckless disregard to the safety of Plaintiff. Plaintiff is therefore entitled

11  to an award of punitive damages in an amount sufficient to punish and deter the Defendants and all

12  others from engaging in such conduct.

13      51.    Defendant is also liable for punitive damages pursuant to N.R.S. § 42.007 since it knew

14  that its employee had committed assault and battery on Plaintiff, that Defendant management and

15  employee Ms. Moreira, were unfit as management and/or employees, and that Defendant Nellis Cab still

16  employed them with a conscious disregard of the rights or safety of others; and/or it authorized,

17  condoned and ratified the conduct of Defendant's management and/or employees; and/or Defendant

18  itself is guilty of oppression, fraud or malice, express or implied.

19      52.    It has been necessary for Plaintiff to retain the services of an attorney and she should be

20  compensated therefor.

21                  **FOURTH CAUSE OF ACTION**
            **Negligent Infliction of Emotional Distress**

22

23      53.    Paragraphs 1 through 52 are incorporated herein by reference.

24      54.    The conduct of Defendant's management and employees, including but not limited to,

25  grabbing her, forcefully kissing her, and fondling her, making unwelcome sexually suggestive, harassing

26  and offensive comments to her, was an abuse of Defendant's position as her employer, who is vested

27  with substantial power to control Plaintiff's work environment and to damage her interests and well-

28  being.

55.   Defendant management and employees' conduct and actions were performed negligently in such a manner as to cause Plaintiff to suffer emotional distress, which Plaintiff continues to suffer.

56.   Defendant's management and employees actually and proximately caused Plaintiff's severe mental anguish and emotional distress.

57.   Pursuant to N.R.S. § 41.130, or alternatively, under the doctrine of *Respondeat Superior*, Defendants, as an employer, are liable to Plaintiff for the wrongful acts of its management and employees.

58.   In addition to its liability under N.R.S. § 41.130, or alternatively, under the doctrine of *Respondeat Superior*, Defendant's own failure to, among other things, take action against their management and employees after they knew of their actions toward Plaintiff, was an abuse of their special relationship with Plaintiff as her employer, was extreme and outrageous, and was done with the intention of, or reckless disregard for, causing emotional distress to Plaintiff.

59.   Plaintiff did suffer and continues to suffer severe mental anguish and emotional distress as a result of Defendant's wrongful acts.

60.   Defendants actually and proximately caused Plaintiff's severe mental anguish and emotional distress.

61.   As a direct and proximate cause of Defendant management and employees' wrongful and/or reckless and/or negligent conduct, Plaintiff suffered and continues to suffer special, general, and compensatory damages.

62.   It has been necessary for Plaintiff to retain the services of an attorney and she should be compensated therefor.

### FIFTH CAUSE OF ACTION
**Negligent Retention, Training, and Supervision of
Defendant's Management and Employees**

63.   Paragraphs 1 through 62 are incorporated herein by reference.

64.   Defendant owes a general duty to use reasonable care in the training, supervision, and retention of employees, particularly those vested with management powers.

65.   Beginning in or around , and continuing thereafter, Defendants knew or reasonably

1  should have known that Defendant's management and employees were engaging in wrongful conduct

2  as described above and were unfit for their positions.

3     66.    At all material times, Defendant knew or reasonably should have known that the conduct

4  and acts of its management and employees, and the conduct, acts, or failures to act of its management

5  and employees, and who failed to take action to prevent the wrongful acts of Defendant's management

6  and employees, violated Plaintiff's rights.

7     67.    At all material times, Defendant knew, or reasonably should have known, that the

8  incidents and conduct of Defendant's management and employees described above, would and did

9  proximately result in injuries and damages to Plaintiff, including but not limited to, mental anguish and

10  emotional distress, and ultimately, the loss of her employment with Defendant.

11     68.    At all material times, Defendant knew, or in the exercise of reasonable care should have

12  known and could have reasonably foreseen, that unless Defendant intervened to protect Plaintiff, and

13  to adequately supervise, control, regulate, train, discipline, and/or otherwise penalize the conduct, acts,

14  and failures to act, and/or terminate the employment of certain management who failed to act, such

15  conduct would continue, thereby subjecting Plaintiff to additional injury and severe emotional distress.

16     69.    Defendant knew, or in the exercise of reasonable care should have known and could

17  have reasonably foreseen, that unless it intervened to protect Plaintiff and to adequately supervise,

18  control, regulate, train, discipline, and/or otherwise penalize the wrongful conduct of certain employees

19  as described above, such conduct would continue, thereby subjecting Plaintiff to additional injury and

20  severe emotional distress.

21     70.    At all times, Defendant had the power, ability, authority and duty to intervene, supervise,

22  train, prohibit, control, regulate, discipline and/or penalize the conduct and/or terminate the employment

23  of the offending management and employees.

24     71.    Despite the knowledge, power, and duty, Defendant willfully, recklessly and/or

25  negligently failed to act so as to prevent, supervise, train, control, regulate, discipline, and/or penalize

26  such conduct, acts, and failures to act, or to otherwise protect Plaintiff.

27     72.    Despite the knowledge, power, and duty, Defendant willfully, recklessly and/or

28  negligently retained certain management and employees when it knew or should have known they were

10

1  unfit for their positions.  Further, Defendant willfully, recklessly, and/or negligently retained other

2  managers and/or employees who failed to act so as to prevent, supervise, train, control, regulate,

3  discipline, and/or penalize such conduct, acts, and failures to act, or to otherwise protect Plaintiff.

4       73.    As a direct and proximate result of the failure of Defendant to protect Plaintiff, and to

5  adequately supervise, train, control, regulate, discipline, and/or penalize such conduct, acts, and failures

6  to act and/or terminate the employment of certain management and employees, such conduct, acts and

7  failures to act were perceived by Plaintiff as, and in fact had the effect of, ratifying, encouraging,

8  condoning, exacerbating, increasing, and/or worsening such conduct, acts and failures to act.

9       74.    As a direct and proximate result of Defendant's action in, among other things, failing to

10  supervise or train its management and employees, and its retention of certain management and

11  employees, Plaintiff has suffered and continues to suffer severe emotional distress and has incurred and

12  continues to incur special, general and compensatory damages.

13       75.    It has been necessary for Plaintiff to retain the services of an attorney and she should be

14  compensated therefor.

15          **SIXTH CAUSE OF ACTION**

        **Breach of the Implied Covenant of**

16          **Good Faith and Fair Dealing**

17       76.    Paragraphs 1 through 75 are incorporated herein by reference.

18       77.    Defendant Nellis Cab promulgated and enacted numerous policies throughout Plaintiff's

19  employment, some of which are set forth in Defendant's employee handbook entitled "Nellis Cab

20  Company Rules and Procedures" quoted above.  These include policies which promise Plaintiff and

21  other employees a safe and healthy workplace and also promise the immediate dismissal of co-

22  employees who assault or threaten harm to other persons, or who subject an associate (like Plaintiff) to

23  oral, written or physical harassment.  These policies and their promises created a special relationship

24  upon which Plaintiff relied.

25       78.    Defendant Nellis Cab breached this covenant of good faith and fair dealing, as it tolerated

26  and allowed Defendant management and Defendant employee Mr. Moreira to violate its own policies

27  as they relate to Plaintiff, thereby engaging in grievous and perfidious misconduct and causing harm and

28  injury to Plaintiff and additionally resulting in her economic harm by the loss of her job with Defendant

1  Nellis Cab.

2      79.   Defendant Nellis Cab actually and proximately caused Plaintiff to suffer, and continue

3  to suffer, special, general and compensatory damages.

4      80.   Defendant Nellis Cab's actions were wrongful, willful, oppressive, malicious, and done

5  with the intent to harm Plaintiff or in reckless disregard of the result to Plaintiff.  Plaintiff is therefore

6  entitled to an award of punitive damages in an amount sufficient to punish and deter Defendant Nellis

7  Cab and all others from engaging in such conduct.

8      81.   It has been necessary for Plaintiff to retain the services of an attorney and he should be

9  compensated therefor.

10                        **SEVENTH CAUSE OF ACTION**
                    **Sex Discrimination Under State and Federal**
11                        **Anti-Discrimination Statutes**

12     82.   Paragraphs 1 through 81 are incorporated herein by reference.

13     83.   Defendant was aware of the prior conduct by Defendant's management and employees

14  to engage in behavior in front of and toward female employees that was degrading, threatening, sexually

15  offensive, and unwelcome.

16     84.   Defendant management responded to Plaintiff's reports of sexual harassment by asking

17  her what she did to encourage Defendant employee Mr. Moreira's sexual harassment of her.  This

18  suggests that Plaintiff was responsible for the sexual harassment, and such a suggestion is also a form

19  of sexual harassment and discrimination.

20     85.   Defendant, as employer, knew or should have known of its long-standing obligation,

21  pursuant to state and federal statutes, to maintain a workplace free of sexual harassment, a form of sexual

22  discrimination.

23     86.   Defendant failed to take reasonably adequate steps to prevent sex discrimination,

24  including sexual harassment, in its workplace.

25     87.   Defendant failed to institute effective institutional policies to remedy complaints about

26  conduct which might constitute sex discrimination, including sexual harassment.

27     88.   Therefore, Plaintiff charges that Defendant Nellis Cab has discriminated against her

28  based on her gender in that she was subjected to frequent intentional, unwelcome, degrading and

1  offensive sexual comments from management and employees of Defendant, and that Defendant allowed,

2  authorized and ratified these actions, including harassment and threatening behavior toward Plaintiff,

3  and allowed the use of Plaintiff's rebuffing as grounds for adverse employment decisions about her.

4  This created a hostile and abusive environment based on sexual harassment and discrimination which

5  interfered with Plaintiff's ability to perform her job functions, in violation of state and federal statutes,

6  and included tangible job detriment to Plaintiff and detriment to her professional career.

7        89.    Plaintiff has also suffered serious mental distress as a result of this unlawful

8  discrimination.

9        90.    Plaintiff is entitled to be fully compensated for all damages she has sustained.

10        91.    It has been necessary for Plaintiff to retain the services of an attorney and she should be

11  compensated therefor.

12  ### EIGHTH CAUSE OF ACTION
### Constructive Discharge

13

14        92.    Plaintiff repleads and realleges and incorporates herein by reference each and every

15  allegation contained in paragraphs 1 through 91 above as if fully set forth.

16        93.    Plaintiff was subjected to sexual harassment, discrimination, assault and battery,

17  intimidation and hostility, which was so intense and pervasive as to constitute a hostile, discriminatory,

18  and oppressive work environment. In addition, when Plaintiff complained, the hostility intensified and

19  retaliation occurred to the point that Plaintiff was no longer able to remain in the employ of Defendant

20  Nellis Cab.

21        94.    As a reasonable person in the place of Plaintiff who had been subjected to this conduct

22  and Defendant Nellis Cab's failure to prevent or remedy same, would have felt forced to resign.

23        95.    Plaintiff ultimately resigned her position at Nellis Cab as a result of the intolerable,

24  discriminatory and retaliatory conditions at Defendant Nellis Cab.

25        96.    As a result of the foregoing conduct, Plaintiff has been harmed and has suffered damages,

26  both economically and emotionally, and is entitled to be fully compensated therefor.

27        97.    It has been necessary for Plaintiff to retain the services of an attorney and she should be

28  compensated therefor.

## NINTH CAUSE OF ACTION
### Injunctive Relief

98.    Plaintiff repleads and realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 97 above as if fully set forth.

99.    That pursuant to 42 U.S.C. § 2000e-2 *et seq.*, Plaintiff seeks injunctive relief requiring that Defendant correct its past discriminatory practices and take appropriate steps to ensure that all employees are afforded a workplace free of unlawful sex discrimination, including sexual harassment.

100.    Plaintiff seeks injunctive relief from this Court requiring Defendant to take all steps necessary to evaluate the existence of conduct in its workplace which might constitute discrimination and institute effective educational and prevention programs to prevent or remedy conduct which might constitute sex discrimination;  and to take appropriate disciplinary action against all employees who participated in, tolerated or failed to act to prevent, stop or remedy the acts of sex discrimination against Plaintiff.

101.    The above-described acts of Defendant Nellis Cab are wanton, willful, malicious and done with a conscious disregard for Plaintiff's federally protected rights. Plaintiff has suffered financial loss as a direct result of said illegal conduct and is entitled to be fully compensated therefor.

WHEREFORE, Plaintiff SHERI WOODRUFF prays for the following relief:

1.    A trial by jury on all issues;

2.    All employment-related losses including but not limited to (back pay, front pay, benefits)subject to proof;

3.    All compensatory, special and general damages allowed by law;

4.    Injunctive relief as set forth above;

5.    Attorneys' fees and costs of suit incurred herein;

6.    Prejudgment interest;

7.    Punitive damages in an amount sufficient to punish and deter Defendant from engaging in any such conduct in the future and as an example to other employers not to engage in

/ / /

/ / /

1  such conduct;  and

2     8.    For such other and further relief as the Court shall deem just and proper.

3     Respectfully submitted this 29th day of December, 2006.

4

5     By: _____
         KRISTINA S. HOLMAN #3742

6        4475 South Pecos Road
         Las Vegas, Nevada 89121

7        Tel: (702) 454-2011
         Fax: (702) 454-3333

8        Attorney for Plaintiff,
         SHERI WOODRUFF

9

10

11

12

13

14

15

16

17

18

F:\DOCS\Woodruff, Sheri\Pleadings\Complaint.wpd

19

20

21

22

23

24

25

26

27

28

15

# EXHIBIT A

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☒ FEPA ☐ EEOC | |

<u>Nevada Equal Rights Commission</u> and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Sheri Woodruff | (702) 579-9971 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 3751 S. Nellis Blvd., #182, Las Vegas, NV 89121 | | 01/16/1959 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Sun Cab Dba Nellis Cab Co | Cat B (101-200) approx 300 | (702) 248-1111 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 3564 W Naples, Las Vegas, NV 89103 | | 003 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER *(Specify)* | EARLIEST 01/01/2004 LATEST 08/09/2005 ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I. I was discriminated against because of my sex, female. On or about January 2004, on a daily basis, through June 4, 2005, I was subjected to sexual harassment. On August 9, 2005, I was discharged. I filed my complaint with the Nevada Equal Rights Commission on July 18, 2005.

II. On or about June 2003, I was hired, and I was employed as a Cab Driver, at the time of harm. On or about January 2004, on a daily basis, through June 4, 2005, Jose (Nacho) Moreira, Cab Driver, subjected me to sexual harassment. This adverse treatment was in the form of sexual remarks/comments, inappropriate touching, and requests for sex. During this period, Nacho would make statements such as "I want to f-k you mommy." " I want to touch your titties mommy." " I want to taste you, mommy." "Give me sex mommy." Nacho would either call me "mommy" or "baby."

III. I complained to Tony Castillo, after enduring the sexual harassment for approximately six months. Nacho ceased sexually harassment for a period of time. However he resumed his adverse treatment towards me. The most recent incident was on or about June 4, 2005, when Nacho blocked my cab with his vehicle. He then came to my cab, and reached through my window and grabbed my head. He forcefully kissed me, bit me and grabbed my left breast.

IV. I complained to the General Manager, Jamie Peno. No action was

** Text is Continued on Attached Sheet(s) **

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | *Sheri L. Woodruff* |
| Date 9/9/05 *Sheri L. Woodruff* Charging Party *(Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |

Aug 25 14:39 2005   CP Initials    Chg # , Attachment Page 1

----------------------------------------------------------------------
Equal Employment Opportunity Commission
Form 5 - Charge of Discrimination, Additional Text
----------------------------------------------------------------------

taken.

V. On August 8, 2005, I submitted my resignation, to be effective
August 12, 2005.

VI. On August 9, 2005, I was discharged. I believe that the discharge
was retaliatory, for complaining about the sexual harassment.

VII. I believe that I was discriminated against because of my sex,
Female and retaliated against, in violation of Title VII of the Civil
Rights Act of 1964, as amended.

# EXHIBIT B

# NELLIS CAB COMPANY

# RULES AND PROCEDURES

*Family Owned and Operated*
*Since 1962*

**Revised May 15, 2003**

# INTRODUCTION

Welcome to Nellis Cab Company, a family-owned business operated by the Chenoweth family in Las Vegas since 1962. Nellis Cab Company, from its one cab beginning in a much smaller Las Vegas, has succeeded in the for-hire transportation industry by dedication to service and the simple principle that the safest, most reliable and comfortable taxi ride in town will carry the most loyal, most satisfied customers.

As you accept employment with our company, and with it these rules and regulations, we expect that you will pledge to help us continue to provide the best in taxicab service to locals and visitors alike. You will be driving the best equipped and maintained taxicabs in service anywhere. You will be responding to calls for service from resorts, convention facilities, restaurants, and other customers who favor our service over our competition.

As a driver, you will receive the highest percentage of gross revenue of any cab company in Las Vegas, as well as many fringe benefits, such as Health and Welfare and safe-driving bonuses.

We are as proud of our drivers as we are of our equipment. We expect and sincerely appreciate your dedication to public safety and regard for the taxicab that has been entrusted and assigned to you.

## THANK YOU !!!

## THE CHENOWETH FAMILY

# TABLE OF CONTENTS

|        | Topic | Page |
|--------|-------|------|
| I. | Scope of Employment | 1 |
| II. | Management | 4 |
| III. | Hours and Conditions | 5 |
| IV. | Standards of Dress | 9 |
| V. | Termination | 11 |
| VI. | Metro Meter Operating Instructions | 14 |
| VII. | Trip Sheet Procedures | 15 |
| VIII. | Driver Two-Way Radio Procedures | 17 |
| IX. | Driver Safety Monitoring | 19 |
| X. | Care of Equipment | 21 |
| XI. | Restricted Geographical Radio Cabs | 23 |
| XII. | Safety and Accident Policy | 24 |
| XIII. | Wheelchair Passenger Loading and Unloading Procedures | 26 |
| XIV. | Dispatching Wheelchair Calls | 27 |
| XV. | Miscellaneous/Provisions | 28 |

Exhibit I - Substance Abuse Policy
Exhibit II - Pre-Placement Substance Abuse Policy Release Form
Exhibit III - Notice of Intent to Test and Employee Consent

# I

# SCOPE OF EMPLOYMENT

It is expressly stated that willful acts of employees such as physical abuse, wrongful detention, verbal abuse, harassment, sexual assault or abuse, slander or discrimination of any kind upon any person in management, passengers, fellow employees, pedestrians, taxi regulators, resort employees, other public transportation company employees/drivers, is forbidden and is BEYOND THE SCOPE OF EMPLOYMENT.

The Employee will hold the Company harmless for any legal cost, obligation or judgment sustained by the Company because of any acts stated above during the normal course of employment such as regular driving assignments in cabs owned by the Company, and at all other times on or away from Company premises or in control of Company-owned or hired vehicles.

TOPIC:    EQUAL EMPLOYMENT OPPORTUNITY

Each applicant and employee is recruited, employed, evaluated, and considered for promotion without regard to any protected characteristic, such as race, color, sex, religion, national origin, disability or age. Wherever practical, the Company wants employees in the job that best suits their abilities, interests, and skills, as well as the Company's need.

TOPIC:    HARASSMENT

Nellis Cab Company is committed to providing a work environment that is free of discrimination. In keeping with this commitment, Nellis Cab Company maintains a strict policy prohibiting unlawful harassment in any form, including sexual harassment.

Any employee who believes he or she has been harassed by a co-worker, supervisor, or agent of the employer should promptly report the facts of the incident(s) and the name(s) of the individual(s) involved to his or her shift supervisor or the General Manager and the Human Resources Department at the main office (702) 367-4004.

TOPIC:    AIDS IN THE WORKPLACE

Nellis Cab Company is committed to maintaining a safe and healthy working environment for all employees. Consistent with this commitment, employees who have Acquired Immune Deficiency Syndrome (AIDS), or have been infected with the HIV virus, will not be discriminated against on that or any other basis. The Company recognizes the view of the Surgeon General of the United States and the Center for Disease Control of the U.S. Public Health Service, that AIDS is not transmitted in the workplace by normal occupational or social contacts.

**TOPIC:**       **INTRODUCTORY PERIOD**

There is a ninety (90) shift introductory period during which both Nellis Cab Company and you, the new employee, may decide whether or not you are compatible with Nellis Cab Company's position requirements, policies, practices and personnel.

**TOPIC:**       **OPEN DOOR POLICY**

Nellis Cab Company is committed to maintaining a positive and pleasant environment in which to work. Employees who encounter work-related problems are encouraged to discuss the problems with their shift supervisor.

**TOPIC:**       **EMPLOYMENT "AT-WILL"**

Employment at Nellis Cab Company is "at-will". That means that both employees and Nellis Cab Company have the right to terminate employment with or without advance notice, and with or without cause. No one other than the General Manager of Nellis Cab Company has the authority to alter this arrangement, to enter into an agreement for employment for a specified period of time, or to make any agreement contrary to this policy, and any such agreement must be in writing and must be signed by the General Manager of Nellis Cab Company.

**TOPIC:**       **PROGRESSIVE DISCIPLINE**

Appropriate conduct, whether employees are on duty or not, is expected at all times while on Company property. Any violation of good conduct or deviation from Company rules and regulations may warrant disciplinary action. As previously noted on your application, you are free to terminate your employment at any time, for any reason, with or without cause, with or without notice, and Nellis Cab Company has these same rights. Nellis Cab Company may, however, exercise its discretion in utilizing forms of discipline that are less severe than termination in certain cases. Examples of such less severe forms of discipline include verbal warnings, written warnings, and suspension.

Although one or more of these steps may be taken in connection with a particular employee, no formal order or system is necessary. The Company may, of course, terminate the employee without following these steps.

**TOPIC:**       **INTERPERSONAL RELATIONS**

It is the responsibility of each employee to show respect to all personnel, visitors, customers, and vendors. It is the responsibility of each employee to deal with the public in a courteous, polite, and respectful manner. Favorable impressions created by courteous public relations develop citizen goodwill, as well as company profits. Discourtesy and disrespect towards any other employee, refusal to comply with rules, orders, instruction or acting in any such conduct which undermines managerial authority or disrupts other employees from carrying out company directive, are prohibited acts and grounds for disciplinary action, including termination. Any disposition or demeanor indicating a discourteous or disrespectful attitude toward the public or ownership may be cause for disciplinary action, including termination. Prohibited acts providing grounds for immediate termination include, but are not limited to: fighting on company premises; loud or boisterous conduct (or horseplay) which may be

2

discourteous or harmful; racial remarks; use of threatening profane, abusive or obscene language at work; harassment or intimidation of fellow employees; interference with the duties of co-workers; brandishing firearms or weapons of any kind.

TOPIC:      CONFIDENTIALITY

Company business information is highly confidential to Nellis Cab and our employees. The unauthorized release, relaying, or discussion of any company business information to any outside or otherwise unauthorized person is cause for termination. If someone questions you, please refer the request to your manager.

All information concerning our employees is kept strictly confidential. Any inquiries regarding your employment will be directed to the appropriate department manager, who will review your personnel file and disclose only that information which is authorized by you to be released, unless required otherwise by law.

Each aspect of employee compensation (wage, salary, bonuses and/or commission) is a personal matter between the individual employee and management. Both parties must hold this information strictly confidential. Aspects of employee compensation shall not be discussed between employees. Violation of this basic confidentiality can lead to immediate termination.

# V

# TERMINATION

No warning letter need be given to any Employee before discharge if the cause of such discharge is:

1.    Any act which might jeopardize the Employer's certificate.

2.    Falsifying a trip sheet.

3.    Dishonesty.

4.    Gross failure to adhere to safety rules and regulations, example; reckless driving.

5.    Fighting while in a work status.

6.    Verbal or physical abuse of a customer.

7.    Abuse of Employer's equipment.

8.    Moving a cab from the scene of an accident before arrival of the police or as instructed by the Nellis Cab Company insurance adjuster.

9.    Operating a cab without valid licenses.

10.   Failure to report an accident or incident immediately.

11.   Insubordination to shift supervisor, two-way radio dispatcher, police officers and Taxicab Authority personnel.

12.   Profanity or offensive language on the radio.

13.   No Call/No Show for work.

14.   Offensive actions or language in a public place while in a work status.

15.   Gambling of any type while in a work status.

16.   Excessive absenteeism.

17.   Refusal to transport sober and orderly patron(s).

18.   Willful misconduct.

19.   Transporting passengers without the meter engaged (high flagging), to include family, friends, and fellow drivers, with time off button engaged.

20. Shortage or failure to turn in cash collections from driver's daily book.

21. Chargeable accident.

22. Toking or tipping supervisors, mechanics, or any other employees or solicitation of a tip.

23. Threatening, intimidating, coercing or interfering with other employees.

24. Sleeping on the job.

25. Having firearms, knives, or other dangerous weapons on the premises or in the taxicab.

26. Falsification of employment application or other Employer records.

27. Refusal to submit to polygraph interview, if requested by Employer, provided said polygraph interview will be for a specific purpose.

28. Off-duty conduct affecting job performance and/or the Employer's image.

29. Unauthorized removal of any Company property.

30. Purchase or sale of any controlled substance while in a work status.

31. Any driver arrested for a felony or any sex-related crime may be suspended by the Employer pending disposition of the charges against him. If found innocent by the court, said driver shall be reinstated by the Employer with no loss of seniority, but shall not be entitled to any wages or benefits for the period of his suspension.

32. Not reporting unsafe conditions of equipment or vehicle.

33. Not wearing seat belts.

34. Unauthorized charter.

35. Over-charging customers and long-routing. Example: Before you take a fare to or from the airport on the airport flyway, you must explain to the customer(s) that the airport flyway will increase the usual fare compared to a shorter, alternative route, and give them a choice in the route they want to take.

36. Non-compliance with tax laws dealing with reporting tip income.

37. Responding without authorization to a driver in trouble.

38. ANY TYPE of sexual misconduct while in a work status.

39. If you are arrested while in a working status. Examples; insubordination, outstanding traffic warrants, non-prescription drugs, or alcohol.

40. Pandering.

41.     Willful or negligent destruction of company property, client's property, or property belonging to others in the company.

42.     Reporting for work (or working) under the influence of alcohol or illegal substances.